UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

STEPHEN KENDRICKS,                    )
           Petitioner,            )
                                   )
                                   )    1:06-cv-159/1:06-cv-268/1:01-cr-139
v.                                    )   *Chief United States District Judge Collier*
                                   )
UNITED STATES OF AMERICA              )
           Repondent.             )

## MEMORANDUM

      Petitioner Stephen Kendricks ("Kendricks") has filed a *pro se* motion and amended motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Court File Nos. 1 & 4). Kendricks was convicted by a jury on all nine counts of an indictment including two counts of armed bank robbery, one count of conspiracy to commit bank robbery, and six counts of weapon charges.

      It plainly appears from the motion and the records of this case that the movant is not entitled to any relief. Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts. The Court determines the government shall not file an answer, an evidentiary hearing is not necessary, and Kendricks' § 2255 motion will be **DENIED** for the reasons which follow.

## I.    NON-DISPOSITIVE MOTIONS

      Kendricks filed a *pro se* petition for a writ of habeas corpus which was opened as Civil Action Number 1:06-cv-159. Kendricks filed an incomplete motion under 28 U.S.C. § 2255 motion (Court File No. 1) along with a motion requesting an extension of time to file an amended motion once his state charges are resolved (Court File No. 2). The Court directed Kendricks to file any amendment to his § 2255 motion on or before December 21, 2006 (Court File No. 3). In compliance with the Court's order, Kendricks subsequently filed a timely amended § 2255 motion but failed to

identify the document as an amended § 2255 motion in Civil Case Number 1:06-cv-159. Thus, rather than filing the motion in his pending case as an amended § 2255 motion in Civil Action Number 1:06-cv-159, the motion was opened as a new case, Civil Action Number 1:06-cv-268.

Pursuant to FED. R. CIV. P. 42(a) the District Court is afforded discretion concerning the purposes and scope of consolidation. Therefore, pursuant to FED. R. CIV. P. 42(a) these cases will be consolidated. All future filings in this action shall be filed in Civil Action Number 1:06-cv-159.

The Clerk will be **DIRECTED** to **CONSOLIDATE** these cases, file this document in both cases, and send the United States and the defendant involved in this case copies of this order and all relevant documents.

## II.  STANDARD OF REVIEW

A federal prisoner may file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. To obtain relief under § 2255 based on an alleged constitutional error, Kendricks bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999). To warrant relief under § 2255, Kendricks is required to show a fundamental defect in the criminal proceedings which inherently results in a complete miscarriage of justice or an egregious error that rises to the level of a violation of constitutional due process. *Davis v. United States*, 417 U.S. 333, 346 (1974); *Griffin*, 330 F.3d at 736; *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994).

### III. <u>PROCEDURAL HISTORY</u>

On August 15, 2001, a federal grand jury filed a five-count indictment charging Kendricks in two of the five counts. In Count One Kendricks was charged, along with two co-defendants, with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and 2(a) and (b). In Count Two Kendricks was charged, along with two co-defendants, of discharging a firearm during and in relation to the bank robbery charged in Count One in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2 (a) and (b). A nine count superseding indictment was subsequently filed on December 19, 2001, charging Kendricks in all nine counts. Kendricks was charged with aiding and abetting other named and unnamed parties as follows: Count One–conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 2113 (a) and (d); Count Two–armed bank robbery in violation of 18 U.S.C. § 2113(a) and (b) and 2(a) and (b); Count Three–threatened to destroy SunTrust Bank with an explosive device in violation of 18 U.S.C. § 844(e) and 2(a) and (b); Count Four–discharged a firearm during the bank robbery charged in Count Two in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2(a) and (b); Count Five–brandished a firearm, a short-barreled, 16 gauge shotgun, during the bank robbery charged in Count Two in violation of Title 18 U.S.C. § 924(c)(1)(A)(ii) and 2(a) and (b); Count Six–possessed a firearm, a short-barreled, 16 gauge shotgun, during the bank robbery charged in Count Two in violation of 18 U.S.C. § 924(c)(1)(B)(I) and 2(a) and (b); Count Seven–possessed a shotgun having a barrel length of approximately nine and fifteen-sixteenths inches which had not been registered to them in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code, in violation of 26 U.S.C. § 5861(d) and 5871 and 18 U.S.C. § 2(a) and (b); Court Eight–armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and 2(a) and (b); and

Count Nine–discharged a firearm while committing the bank robbery as charged in Count Eight in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2(a) and (b).

After a six-day jury trial, Kendricks was convicted of Count One through Count Nine, and subsequently sentenced by this Court to a term of 500 months imprisonment to be followed by five years of supervised release. Kendricks filed a direct appeal which was affirmed by the Sixth Circuit Court of Appeals on April 13, 2005. The mandate issued on July 13, 2005. *See United States v. Kendricks*, 127 Fed.Appx. 836 (6th Cir. 2005) (unpublished), *rehearing en banc denied* July 5, 2005. When a federal criminal defendant pursues a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed. *Clay v. United States*, 537 U.S. 522, 525 (2003). Kendricks timely filed the instant § 2255 motion on or about July 7, 2006.

## IV.  FACTS

The following recitation of the facts is from the Presentence Investigation Report ("PSI")[1]:

SUNTRUST BANK, Cleveland, Tennessee

13.  On July 9, 2001, three men, wearing masks and gloves, later identified as William Kelly, Adam Snyder and Tyrone Griffin, entered the SunTrust Bank located on 25th Street in Cleveland, Tennessee. Kelley was carrying a handgun, Griffin was carrying a sawed-off shotgun and Snyder had a bag for the money and a box. Snyder placed the box on the teller counter and stated that it was a bomb, and they could blow up the bank. (The bomb was two spray paint cans taped together with a pager.) He then vaulted the teller counter as Kelly fired a round from his weapon. The bullet hit a metal tray on the teller counter, and Snyder later believed that Kelly may have

---

[1]  The record variously refers to one of Kendricks' co-defendants as Tyrone "Griffin" and Tyrone "Griffen." Because Kendricks' co-defendant signed his name as Tyrone Griffin on his plea agreement, the Court will refer to him as Griffin unless quoting or discussing material using a different spelling.

been shooting at him. Snyder began emptying two teller drawers as Kelly and Griffin forced employees and customers to the floor. One bank employee was trying to crawl beneath her desk for safety, and Griffin pulled her out into the open by her hair and pointed the gun at her back. Another employee stated that Kelley had pointed the weapon at the back of her head. Customers and employees stated that all three men were constantly shouting profanities and screaming that they were going to kill them.

14.     Snyder emptied two teller drawers, avoiding dye packs and bait money. A total of $28,607 was taken from the teller drawers. The three left the bank and got into the car driven by Stephen Kendricks. The car had been stolen by Kendericks and parked in Cleveland to use in the robbery. They drove two blocks and abandoned the stolen car, getting away in Kelley's vehicle. They drove to a hotel in East Ridge where they divided the money between the four of them.

15.     (The government believes that Snyder, Kelley and Kendricks had been involved in a previous bank robbery in Dalton, Georgia. Snyder and Kelley have pleaded guilty to this bank robbery. Kendricks is currently set for trial in the Northern District of Georgia. The Cleveland robbery was the first bank robbery involving Griffin.)

FIRST TENNESSEE BANK, Chattanooga, Tennessee

16.     In the early morning hours of August 3, 2001, Jonathan Smith (not involved in any other bank robbery) was picked up by Steve Kendricks who was driving a Chevrolet Impala. The pair drove around and eventually visited Kendricks' mother where she was working at a Favorite Market in the St. Elmo neighborhood. While at the Favorite Market, Kendricks purchased a tool resembling a screw driver. Kendricks and Smith then left the store, drove to a location on St. Elmo Avenue and called Tyrone Griffen. Griffen, driving an El Camino, joined the pair about thirty minutes later. After talking in the parking lot of a church and discussing robbing a bank, Kendricks and Griffen left in the El Camino to steal a car. When they returned to where Smith was waiting with the Impala, one was driving the El Camino and the other was driving a dark colored Buick with the passenger side window broken out. the pair drove the cars to a nearby side street and parked the Buick. Griffen then returned Smith home after they agreed to meet in the morning at a room Kendricks had rented at the Suburban Lodge on Brainerd Road.

17.     Before 8:00 a.m., Griffen returned and picked up Smith, and the two of them traveled to the Suburban Lodge to meet Kendricks. While there, Smith saw money drying and more soaking in dye remover solution. Kendricks told him that the money was from a bank robbery in Dalton, Georgia committed by Kendricks, and two other individuals. About $6,000 of dye-stained money was hidden in Kendricks' things in a plastic box. The three left the hotel in the El Camino and the Impala.

Kendricks drove the Impala to a friend's house and left the car there. The three then traveled to Brainerd Road and checked out possible locations for the bank robbery. Unable to choose a bank in that area, the trio traveled back to the St. Elmo area and rode by several banks. After two to three hours of driving around, they decided to retrieve the stolen car and get ready to rob a bank. They retrieved the stolen Buick from the side street, drove to Griffen's grandfather's house and left the El Camino. Inside the stolen car were some clothes, masks, gloves, and a duffle bag to use during the robbery that they had placed in the car the night before.

18.     Kendricks, at the wheel of the stolen car, first drove to the SunTrust Bank in St. Elmo. The bank appeared to have a lot of customers, and they decided to check out another location. The First Tennessee Bank branch in St. Elmo did not appear to be busy, and Kendricks drove to the bank parking area. Smith and Griffen pulled on their masks and left the vehicle. Smith was carrying a revolver, which belonged to either Kendricks or Griffen, and Griffen was carrying the duffle bag. Upon entering the bank through the rear door, Smith fired a shot in the ceiling of the bank and yelled for everyone to get down. Customers and bank employees all laid on the floor. One customer was experiencing heart palpitations and remained seated on the floor in front of the teller windows. Griffen jumped over the teller counter and began taking money from the teller drawers. Smith kept telling him to hurry and telling the victims to stay down on the floor. During the robbery, one customer was able to crawl out the door and run to the restaurant next door and call police. After less than three minutes, Griffen jumped back over the counter, and the two left the bank.

19.     As Kendricks, Griffen and Smith were driving down St. Elmo Avenue toward 37th Street, the dye pack exploded in the duffle bag containing the money. As a red cloud of smoke filled the air in the car, tear gas was also released from the dye pack. The trio could not see or breathe, and as they approached a stop sign, Griffen threw the bag out of the car window. At 37th Street, they abandoned the car. Griffen walked off down 37th Street, and Kendricks and Smith ran into some woods and sat down. When Kendricks could speak, he told Smith to take the stolen car and get the El Camino. Along the way, Smith picked up Griffen and the two of them retrieved the El Camino. Griffen hid the weapon used by Smith in the woods near his grandfather's house, and they threw their clothes in a trash can near Griffen's girlfriend's house. They returned to St. Elmo to pick up Kendricks but saw him sitting in a patrol car at the bank. They returned to Griffins' girlfriend's house and after dark, Smith went home.

20.     The Federal Bureau of Investigation (FBI) arrived at the scene of the bank robbery soon after it had occurred. Local law enforcement apprehended Kendricks, who did not make a statement although he admitted to taking part in the bank robbery. The FBI interviewed witnesses, who saw the trio driving away from the bank, and associates of Kendricks', as well as reviewing police reports, and they narrowed the search to a few of Kendricks' known associates. They went to Smith's

sister's house soon after the robbery looking for Smith who was still with Griffen. When Smith returned to his sister's, he learned that the FBI was looking for him. He then left his sister's and went to a cousin's house where he stayed until he turned himself in at the United States Attorney's Office in Chattanooga on August 9, 2001. At that time, he made a complete statement regarding his role in the bank robbery and his knowledge of other robberies.

21. According to bank records and the FBI, $7,411 was taken during the robbery. The entire amount was recovered. A passerby saw the bag on the side of the road and put the bag, which was still smoking from the dye and tear gas pack, on the roof of his vehicle and drove it back to the bank.

## SEARCH WARRANTS

22. Following Kendricks's arrest on August 3, 2001, a receipt was located on Kendricks for the rental of a room at the Suburban Lodge on Lee Highway in Chattanooga, Tennessee, in the name of William Kelley. Law enforcement obtained a search warrant for Room 108 and found a recently-purchased stereo, three open and empty face mask bags, a bottle of De-Solv-It cleaning solution which was used to remove the dye stains from the money taken in the Dalton, Georgia bank robbery, the label from a pair of gloves, $620 in dye-stained currency soaking in cleaning solution, $800 in cleaned and drying currency, a green bandana and a red bandana. No one was in the room at the time of the search.

23. Following the hotel room search, a warrant was executed at Kelley's residence in Flinstone, Georgia. Officers found dye-stained currency, a burned dye pack mechanism, a short-barreled shotgun, a Taurus 9mm pistol, a Derringer pistol and a Llama semi-automatic pistol. Kelley, who was present during the search, admitted to officers that he was involved in several robberies in the Chattanooga area.

24. A search was conducted at the residence of Tyrone Griffin. A bag of crack cocaine (3.5 grams) and a .38 caliber revolver were located in Griffin's bedroom. Griffin, who was present at the time of the search, admitted to being involved in the robbery of the Cleveland bank, but did not admit to his involvement in the Chattanooga robbery.

(PSI at 5-8).

## V.  ANALYSIS OF CLAIMS

Kendricks raises four claims in his amended § 2255 motion. First, Kendricks claims he is

entitled to § 2255 relief because his counsel was ineffective during sentencing and on direct appeal. In support of this claim Kendricks contends counsel failed to object to sentencing enhancements and on direct appeal, counsel failed to "find any arguable issues during his direct appeal;" did not communicate with the defendant on issues concerning the direct appeal; and did not send him copies of the arguments made.

Second, Kendricks claims there was insufficient evidence to support his conviction. In support of this claim Kendricks contends the evidence was speculative, not direct or circumstantial. Specifically, Kendricks claims the cell-phone transcripts of his co-defendants, which he fails to include in the record, indicate he was not present at two of the robberies and those two robberies added twenty-five years to his sentence.

In his third claim, Kendricks contends the sentencing guidelines were misapplied and his sentence was incorrectly enhanced based upon juvenile convictions unrelated to the instant case which were neither included in the indictment nor found beyond a reasonable doubt in violation of *United States v. Booker*, 543 U.S. 220, 244 (2005).

In his fourth and last claim, Kendricks asserts the prosecutor engaged in misconduct when the prosecutor coached the witnesses while they were testifying. Specifically, Kendricks claims the prosecutor gave the witnesses hints and questioned them about conduct for which he was not indicted.

A.     **Ineffective Assistance of Counsel**

Kendricks submits two sub-claims under his ineffective assistance of counsel claim. First,

Kendricks claims counsel was ineffective during sentencing and second, he claims counsel was ineffective on appeal. To establish ineffective assistance of counsel, Kendricks must demonstrate a deficiency by counsel which rendered counsel's assistance objectively unreasonable and demonstrate the deficient performance resulted in prejudice to him. The Supreme Court, in *Strickland v. Washington,* 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims v. Livesay,* 970 F.2d 1575, 1579-80 (6th Cir. 1992).

Kendricks's claim of ineffective assistance of counsel in his § 2255 motion identifies two different instances of alleged ineffective assistance. The Court will address each claim below.

### 1.    *Ineffective Assistance of Counsel at Sentencing*

Kendricks claims trial counsel was ineffective for failing to object to the enhancement in the Presentence Investigation Report (PSI) at sentencing. Kendricks has failed to identify the enhancement counsel should have objected to and the objection counsel should have made. Consequently, Kendricks' claim that counsel was ineffective for failing to object to the enhancement in the PSI during his sentencing hearing is insufficiently pleaded because he has failed

to provide any factual support as required by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. There is no proof before the Court identifying the enhancement to which counsel should have objected nor is there any evidence of the objection that should have been made.[2]

Accordingly, Kendricks is not entitled to § 2255 relief on his claim that trial counsel failed to object to the enhancement in the PSI at sentencing.

### 2. *Ineffective Assistance on Appeal*

Next, Kendricks claims counsel was ineffective for failing "to find any arguable issues during direct appeal, not communicating with the defendant on issues concerning the direct appeal; and [failing to] send the defendant any copies of such arguments, notifying defendant of the argument."(Court File No. 1, at 5).

In summary, Kendricks alleges ineffective assistance of counsel on appeal for failure to raise unidentified issues and for failure to communicate with him during the direct appeal. "The Sixth Amendment guarantees effective assistance of counsel on the first appeal as of right." *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.), *cert. denied,* 516 U.S. 1183 (1996), *citing Evitts v. Lucey,* 469 U.S. 387 (1985). If we assume, for the sake of discussion, Kendricks could prove he had a legitimate non-frivolous issue counsel failed to raise during his direct appeal, arguably proving deficient performance, and if we also assume counsel's failure to communicate with Kendricks during the direct appeal is deficient performance, then Kendricks must also hurdle the prejudice

---

[2] The Court observes counsel objected to one of the two criminal history points on the basis Kendricks' maintained the charge was dismissed. However, the probation officer provided a copy of the Hamilton County Juvenile Court order releasing the defendant from probation on the charge (not dismissing the charge).

prong of the *Strickland* test. *Moore,* 74 F.3d at 693.

In order to show denial of a fair appeal, Kendricks must show actual prejudice. *Moore* at 693, *citing Bransford v. Brown,* 806 F.2d 83 (6th Cir. 1986), *cert. denied,* 481 U.S. 1056 (1987). Not only is Kendricks required to show counsel committed errors, which Kendricks has failed to do, he must also show his counsel's errors were so serious as to deprive him of a fair appeal, *i.e.,* an appeal whose result is reliable. *Moore,* 74 F.3d at 693. There is nothing in the present record to indicate Kendricks had a valid issue to appeal that would have revealed some reversible error. There is no allegation or evidence offered to prove that failure to raise some unidentified issue on appeal or that counsel's alleged failure to communicate with Kendricks during the appeal resulted in any actual prejudice. *Moore,* 74 F.3d at 693. Kendricks has failed to present anything upon which the Court can base a finding of actual prejudice. *Bransford,* 806 F.2d at 87.

In the final analysis, Kendricks cannot satisfy either prong of the *Stickland* test. There is nothing in the motion or record to indicate his counsel's performance was deficient and his counsel caused Kendricks to lose what he otherwise would probably have won on appeal. Kendricks has not specified or articulated any valid legal issue that should have been raised on appeal concerning his conviction and sentence. Nor has Kendricks explained how his counsel's failure to communicate with him during the direct appeal was deficient performance or resulted in prejudice. In the present case, the Court is not aware of any viable grounds for an appeal. Kendricks has failed to specify what potentially meritorious issue(s) should have been appealed by his attorney. In the absence of Kendricks identifying a specific ground for appeal and explaining how counsel's failure to communicate with him during the direct appeal prejudiced him, the Court concludes this claim is frivolous. A § 2255 claim raising conclusory allegations is subject to summary dismissal without

an evidentiary hearing. *See Bleckledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusive allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Kendricks has failed to show that, but for his counsel's failure to raise some unidentified issue(s) and communicate with him during his direct appeal, there is a reasonable probability the outcome of his case would have been different. *Moore,* 74 F.3d at 692. Thus, he has failed to demonstrate counsel's conduct resulted in actual prejudice to him. Kendricks' claim that his appellate counsel failed to appeal "any arguable issues" and failed to communicate with him concerning the appeal is factually insufficient and presents no potential claim for relief under 28 U.S.C. § 2255. Accordingly, Kendricks claim of ineffective assistance of counsel during sentencing and on appeal does not entitled him to § 2255 relief.

**B.      Insufficient Evidence**

Kendricks contends the evidence presented at trial was insufficient to support the convictions on Counts Two through Nine because the evidence was neither direct nor circumstantial but rather, was mere speculation. Kendricks supports this claim with an allegation that the cell-phone transcripts of his co-defendants indicated Kendricks was not present at two of the robberies.[3]

Kendricks insufficient evidence claim fails for three reasons. First, Kendricks faces the procedural bar of timeliness on his insufficient evidence claim. A § 2255 petitioner procedurally

---

[3]      Kendricks failed to submit the cell-phone records or direct the Court's attention to the location of the records in the criminal file. A review of the criminal court file and the § 2255 court file did not reveal any cell-phone records. Nevertheless, such records would not demonstrate Kendricks' location at the time of the robberies.

defaults if he fails to assert his contentions on direct appeal. An issue may not be raised for the first time on collateral review without showing cause for the procedural default and actual prejudice as a result of the error or actual innocence. *Bousley v. United States*, 523 U.S. 614,619 (1998); *United States v. Watroba,* 56 F.3d 28 (6th Cir.), *cert. denied,* 516 U.S. 904 (1995); *Callahan v. United States*, 881 F.2d 229, 231 (6th Cir. 1989), *cert. denied*, 494 U.S. 1083 (1990); *Zack v. United States*, 915 F.Supp. 913, 916 (E.D. Mich.), *aff'd sub nom Vicary v. United States*, 89 F.3d 837 (6th Cir. 1996). The Sixth Circuit has repeatedly held the sufficiency of the evidence to support a conviction may not be collaterally reviewed during a § 2255 proceeding, as the issue of sufficiency of the evidence by which a defendant is convicted can be raised only by direct appeal. *United States v. Shields*, 291 F.2d 798, 799 (6th Cir.), *cert. denied*, 368 U.S. 933 (1961); *United States v. Osborne*, 415 F.2d 1021, 1024 (6th Cir. 1969) ("Moreover, we have repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding."), *cert. denied*, 396 U.S. 1015 (1970); *Hall v. United States*, 172 F.3d 872 (6th Cir. 1998) (unpublished table decision), *available in* 1998 WL 887276, at *2 ("This court did not grant a certificate of appealability as to Hall's challenge to the sufficiency of the evidence supporting his CCE conviction. Whether the evidence was sufficient to support a conviction may not be collaterally reviewed in a § 2255 proceeding." See *United States v. Osborn,* 415 F.2d 1021, 1024 (6th Cir.1969) (en banc), *cert. denied,* 396 U.S. 1015 (1970). Kendricks failed to raise an insufficient evidence claim on direct appeal. The proper standard of review for an issue not raised on direct appeal is the cause and actual prejudice standard, or the actual innocence standard. Therefore, to obtain collateral relief based on trial errors to which no contemporaneous objection was made and which were not raised on direct appeal, Kendricks must show both the cause excusing his default and actual prejudice

resulting from the errors of which he complains or demonstrate he is actually innocent of the subject offenses. *Bousley v. United States*, 523 U.S. at 619; *United States v. Frady,* 456 U.S. 152 (1982). Kendricks has failed to show reasonable cause for failure to raise the issue initially, prejudice, or that he is actually innocent. Kendricks has not submitted any reason to excuse his failure to raise the issue initially, either during his sentencing hearing or on direct appeal. (Court File No. 1). Furthermore, Kendricks has neither alleged nor demonstrated prejudice nor actual innocence.

Consequently, Kendricks' claim is procedurally barred thereby necessitating its dismissal. However, assuming Kendricks' claim is not procedurally barred, the second reason for dismissing his insufficient evidence claim is because he has failed to provide any factual support for this claim. In this claim, Kenderick makes a general and virtually factually unsupported claim that the evidence is insufficient to support his convictions on Count Two through Count Nine of the indictment. Kendricks does not identify which element or elements of each crime the government failed to prove. Kendricks allegation of insufficient evidence, unsupported by any other evidence, is insufficient to undermine the jury's findings of guilt on Counts Two through Nine. Kendricks has inadequately pleaded this claim under Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts, which requires claims be pleaded with factual specificity. Kendricks' claim fails to "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts.

Kendricks failed to provide any supporting facts to his claim of insufficient evidence other than a vague reference to "cellphone transcripts from co-defendants, indicated defendant wasn't even present at 2 of the robberies" [Civil Case No. 1:06-cv-268, Court File No. 1]. Kendricks has

failed to submit the cell-phone records and the Court has not found any such records in the court file or any evidence indicating Kendricks was not present at both bank robberies. The complete lack of any factual allegations or supporting evidence renders Kendricks' claim insufficient to warrant relief under § 2255. Thus, Kendricks claim of in sufficient evidence will be dismissed for failing to set forth in summary form the facts supporting this claim. Rule 2(c) of the Rules Governing Section 2255 Cases in the United States District Courts.

Moreover, assuming for the sake of discussion that Kendricks could show cause for his procedural default and his insufficient evidence claim was adequately pleaded, the third reason the claim would be dismissed is because of Kendricks' failure to show the evidence is insufficient to support his convictions.

Kendricks does not attack the sufficiency of the evidence establishing he was involved in a conspiracy to commit bank robbery as alleged in Count One of the indictment. However, Kendricks contends there is insufficient evidence in the record to establish he was involved in the crimes set forth in Count Two through Count Nine of the indictment. Although Kendricks has failed to provide any factual support for his insufficient evidence claim the Court presumes he is claiming the evidence was insufficient to convict him on Counts Two through Nine under the theory he aided and abetted his co-conspirators. Presumably Kendricks contends that because he did not personally go inside and rob the bank; discharge the weapons; threaten to use a fake explosive; brandish a firearm; possess a short-barreled firearm in the bank; or possess the unregistered firearm, his role as the getaway driver is not sufficient to support his convictions of Counts Two through Nine of the indictment.

Count Two through Seven of the indictment are based on the July 9, 2001, robbery of

SunTrust Bank in Cleveland, Tennessee. Counts Eight and Nine are based on the August 3, 2001, robbery of First Tennessee Bank in Chattanooga, Tennessee. The Court will discuss the applicable law for analyzing an insufficient evidence claim and then, separately, analysis each bank robbery.

Sufficient evidence to support a conviction exists if, after viewing the evidence in light most favorable to the prosecution, a rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998). The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt. *United States v. Peters*, 15 F.3d 540, 544 (6th Cir.), *cert. denied*, 513 U.S. 883 (1994). In assessing the sufficiency of the evidence, the court does not weigh the evidence, access the credibility of the witnesses, or substitute its judgment for that of the jury. *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.), *cert. denied*, 516 U.S. 926 (1995).

To sustain a conviction under the theory of aiding and abetting, the government must prove the defendant, as an accomplice, associated and participated in the underlying crime. The government must prove the defendant, as an accomplice, "was a participant rather than merely a knowing spectator, that his presence at the scene of the crime was not surplusage, and that the crime would not have transpired without him." *United States v. Franklin*, 415 F.3d 537, 554 (6th Cir. 2005). These principles apply to each conviction Kendricks challenges.

### 1. *SunTrust Bank Robbery in Cleveland, Tennessee*

Counts Two through Seven of the indictment pertain to the SunTrust Bank Robbery. The SunTrust Bank robbery was committed by Kendricks, William Kelly, Adam Snyder, and Tyrone Griffin. Although there were some minor discrepancies in testimony, the essentially uncontroverted

evidence revealed Kendricks stole the car they used as the getaway car; the stolen car was parked in Cleveland at the Holiday Inn prior to the commission of the robbery; Kendricks and his accomplices went to Kelly's trailer and made a fake explosive device and gathered masks, gloves, and guns in preparation of the bank robbery; Kendricks was present when the guns, gloves, and masks were initially gathered, when they were loaded in the trunk of the vehicle which they drove to the getaway car, and when they were passed out in preparation of the robbery; and Kendricks drove the getaway car for this robbery. In addition, the uncontested testimony reflects all the accomplices and Kendricks were wearing gloves because they did not want to leave any fingerprints anywhere. Kendricks drove the stolen vehicle to the bank where his accomplices went inside and committed the robbery and Kendricks drove them from the scene of the robbery to Kelly's sister-in-law's car (Trial Transcript "T.T." at 52-68). Applying the proof to each Count, the Court will now explain why the evidence is sufficient to support each of Kendricks' convictions.

a.     Count Two-Armed Bank Robbery

In Count Two Kendricks was convicted of the July 9, 2001, bank robbery of SunTrust Bank in Cleveland, Tennessee. "[T]o convict a getaway driver of aiding and abetting an armed bank robbery, the government must first show that the defendant knowingly and intentionally aided and abetted the underlying offense of unarmed bank robbery and then show that the defendant knowingly and intentionally aided the commission of the aggravating element: assaulting a person or putting a life in jeopardy before or during the commission of that aggravating element." *United States v. Hunt*, 156 F.3d 1233 (6th Cir. 1998) (unpublished table decision), *available in* 1998 WL 432475, *5.

Such a showing has been made in the instant case. The government proffered evidence

demonstrating Kendricks helped plan the robbery; was the getaway driver; and knew all of his accomplices had weapons they intended to use to control the bank employees and victims so they could commit the robbery. Thus, there was sufficient evidence to sustain a conviction of armed bank robbery. The evidence is sufficient to demonstrate Kendricks was an accomplice to the armed bank robbery–he associated and participated in the bank robbery; he was a participant and not merely a knowing spectator; his presence at the scene of the crime was not surplusage; and serving a significant role in the robbery by acting as the getaway driver, the crime would not have transpired without him. Thus, his conviction for armed robbery is supported by sufficient evidence.

b.  Count Three–Making a Threat to Use an Explosive

Count Three charged Kendricks with threatening to use an explosive device. As previously explained, for the jury to find Kendricks committed this crime, it was not necessary to find he personally committed the crime himself. The fact he intentionally helped or encouraged someone else to commit the crime is sufficient to convict him under the aider and abettor theory. *See United States v. Blood*, 435 F.3d 612, 623 (6th Cir. 2006) ("'The government must prove that the aider/abettor had the same mental state as that necessary to convict a principal of the offense.' *United States v. Searan*, 259 F.3d 434, 444 (6th Cir. 2001)"(citation omitted). "[A] defendant is liable as an aider and abettor for use of a firearm in relation to a crime of violence when his accomplice uses a firearm in relation to jointly undertaken criminal activity." *United States v. Bandy*, 239 F.3d 802, 805 (6th Cir. 2001). Applying the standards for aiding and abetting to Kendricks' conviction for threatening to use an explosive, there was sufficient evidence to convict Kendricks of threatening to use an explosive under the aiding and abetting theory.

The government offered evidence demonstrating Kendricks and his accomplices all gathered

18

at Kelly's residence and constructed the explosive device. They all knew it was going to be used to intimidate and control the bank employees and victims. Kendricks drove his accomplices to the bank knowing they possessed the explosive and planned to use it to effect the robbery. This uncontested evidence was sufficient to convince a rational trier of fact that Kendricks knew his accomplices were armed with an explosive, albeit fake; were going to threaten to use it to force the bank employees and victims to abide by their demands; and acted with the intent to assist or influence the commission of the bank robbery. Thus, the evidence was sufficient to find Kendricks threatened to use an explosive and he is not entitled to § 2255 relief on this claim. *See Rattigan v. United States*, 151 F.3d 551, 557-58 (6th Cir.) (defendant may be convicted of aiding and abetting a § 924(c) violation even if the defendant never had actual possession of a firearm during the course of committing the crime), *cert. denied*, 525 U.S. 1031 (1998).

c.    Count Four–Discharging a Firearm

Kendricks was convicted of discharging a firearm during the July 9, 2001 bank robbery, in Count Four. As previously explained, Kendricks associated himself with the bank robbery, knew his accomplices were armed, and acted with the intent to assist or influence the commission of the bank robbery. His accomplices testified a firearm was discharged during the commission of the robbery. Applying the aiding and abetting standards discussed above to the facts of this case, the evidence is sufficient to support Kendricks' conviction under the aiding and abetting theory for discharging a firearm during a crime of violence. *See United States v. Robinson*, 389 F.3d 582, 591 (6th Cir. 2004) (to sustain a conviction for aiding and abetting the use of a firearm, the government must prove the defendant associated and participated in the use of the firearm in connection with the underlying crime), *cert. denied*, 544 U.S. 1026 (2005).

d.      Count Five–Brandishing a Firearm

Kendricks was convicted of Count Five for aiding and abetting the brandishing of a firearm during a crime of violence. As previously discussed, Kendricks participated in the robbery and knew his accomplices were going into the bank armed.

In the Sixth Circuit, under the theory of aiding and abetting brandishing a firearm, "the government must prove the defendant both associated and participated in the use of the firearm in connection with the underlying crime." *United States v. Morrow*, 977 F.2d 222, 231 (6th Cir. 1992) (en banc), *cert. denied*, 508 U.S. 975 (1993). "This can be satisfied if the accomplice knows that the principal is armed and acts with the intent to assist or influence the commission of the underlying predicate crime." *Rattigan v. United States*, 151 F.3d at 558; *see also United States v. Davis*, 306 F.3d 398, 408-10 (6th Cir. 2002) (evidence was sufficient to support two bank robberies and aiding and abetting in the use and brandishing of a firearm where accomplices robbed the banks with defendant's assistance and weapons were supplied by defendant), *cert. denied*, 537 U.S. 1208 (2003); *Wright v. United States*, 182 F.3d 458, 465 (6th Cir. 1999) (concluded the Government established the defendant aided and abetted his co-conspirators in the using or carrying of firearms because he "knew his co-conspirators were armed" and "acted with intent to assist or influence the commission of the underlying predicate crime"); *United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995) (evidence of the defendant's intent to commit bank robbery, combined with the knowledge her accomplice was using and carrying her shotgun, permitted the jury to convict the defendant of aiding and abetting).

The Sixth Circuit has previously determined a getaway driver can be convicted under the theory of aiding and abetting for brandishing a firearm during and in relation to a crime of violence

if the government can show the defendant was an active participant in the crime and the crime would not have occurred in his absence. *See United States v. Franklin,* 415 F.3d 537, 555 (6th Cir. 2005)(the evidence demonstrating Clarke knew Franklin was armed was sufficient to support Clarke's conviction for brandishing a firearm); *United States v. McNeil*, 106 Fed.Appx. 294, 304 (6th Cir. 2004)(unpublished), *citing Rattigan v. United States*, 151 F.3d 551, 558 (6th Cir. 1998). There was sufficient evidence in the instant case to support the jury's verdict. Kendricks was with his accomplices on the day of the bank robbery, participated in planning the robbery, knew his accomplices were armed, and he drove his accomplices to the bank for the purpose of robbing it. Each of his accomplices was armed with a weapon and they testified Kendricks was present when the weapons were distributed. After the robbery, when William Kelly, Adam Snyder, and Tyrone Griffin returned to the vehicle, Kendricks drove them away from the scene of the crime to another vehicle in an effort to elude detection. In light of the testimony and circumstantial evidence the jury could have reasonably inferred Kendricks knew his accomplices were armed and he acted with the intent to assist or influence the commission of the bank robbery. Thus, the evidence is sufficient to support Kendricks' conviction under the aiding and abetting theory for brandishing a firearm during the commission of a crime of violence.

> e. <u>Count Six–Possession of a Firearm; Count Seven–Possession of Unregistered Firearm</u>

Likewise, applying the above stated standards for determining whether Kendricks aided and abetted his accomplices in brandishing a firearm the evidence is sufficient to support Kendricks convictions under Counts Six and Seven for possessing a short-barreled firearm during a crime of violence and possessing an unregistered firearm. Although Kendricks did not personally use or carry the weapons into the bank, the same standards discussed above to establish Kendricks, under the

theory of aiding and abetting, brandished a firearm can be imported to the conviction of possession of a short-barreled firearm during a crime of violence and possession of an unregistered firearm. *See United States v. Brandy*, 239 F.3d 802, 805 (6th Cir. 2001) ("[A] defendant is liable as an aider and abettor for use of a firearm in relation to a crime of violence when his accomplice uses a firearm in relation to jointly undertake criminal activity"); *also see Rattigan v. United States*, 151 F.3d at 557 (Although there was no evidence the defendant actually possessed the gun, he was convicted under a theory of aiding and abetting his accomplice who possessed the weapon). As previously stated, Kendricks' knowledge that his accomplices were armed and his actions demonstrating his intent to assist or influence the commission of the bank robbery, along with the testimony of his accomplices that they possessed and used the weapons, provides sufficient evidence to support Kendricks' weapons convictions. Kendricks' accomplices testified they used a short-barreled firearm and an unregistered firearm during the commission of the robbery and Kendricks' was aware they possessed the weapons and were going to use them to commit the bank robbery. Kendricks' knowledge that the firearms were going to be used in the commission of the robbery and his role as the getaway driver is sufficient to support these convictions. Kendricks offers no evidence to contradict the factual basis accepted by the jury. Accordingly, Kendricks is not entitled to any relief on his insufficient evidence claim for the July 9, 2001 bank robbery.

## 2. *First Tennessee Bank Robbery in Chattanooga, Tennessee*

Counts Eight and Nine pertain to the First Tennessee Bank Robbery committed in Chattanooga, Tennessee on August 3, 2001. Kendricks, along with Jonathan Smith and Tyrone Griffin met the night before they robbed First Tennessee Bank and planned to rob a bank. Kendricks and Griffin left Smith to steal a car. When they returned to where Smith was waiting one was

driving the El Camino they initially left in and one was driving a dark colored Buick. Griffin then drove Smith home and they agreed to meet at a room Kendricks had rented at the Suburban Lodge on Brainerd Road.

Griffin and Smith went to the Suburban Lodge and found Kendricks cleaning a gun, a .38 revolver. Kendricks gave Griffin and Smith money and sent them to Wal-Mart for masks and gloves. Griffin also bought a toboggan (T.T. at 471-478). After driving around for several hours the parties eventually decided to rob the First Tennessee Bank. Kendricks drove the getaway car and Griffin and Smith went inside and robbed the bank. Although Griffin followed Kendricks instructions to leave the last stack of money at the end of the drawer alone because that was the one with the dye, they still ended up with a dye bomb in the bag. The bag started smoking and they eventually threw the bag out of the car. They all got out of the car and Griffin began walking on his own, taking off his outer layer of clothes. Soon thereafter, Smith pulled up to Griffin in the stolen vehicle and drove him to the El Camino. They switched cars and went looking for Kendricks. As they were driving someone flagged them down and told them Kendricks was picked up by the police. Smith testified the .38 revolver he used to rob the bank belonged to Kendricks (TT. at 490-92; 581-82)).

### a.   Count Eight–Armed Bank Robbery

As discussed above under the July 9, 2001 robbery analysis, the evidence is sufficient to demonstrate Kendricks knowingly and intentionally participated in the offense of armed bank robbery based on his actions of conspiring with his two accomplices to commit an armed bank robbery; providing the weapon to effect the robbery; and participating as the getaway driving in the robbery. The overwhelming and essentially uncontroverted evidence against Kendricks is sufficient to sustain the conviction of armed bank robbery.

b.     _Count Nine-Discharging a Weapon_

During the First Tennessee Bank Robbery, Smith discharged the firearm Kendricks had supplied to him. Kendricks' knowledge that the firearm was going to be used in the commission of the robbery and his role as the supplier of the firearm and the getaway driver is sufficient to support his conviction for discharging a firearm during the August 3, 2001 robbery, under the aiding and abetting theory. Kendricks offers no evidence to contradict the factual basis accepted by the jury. Accordingly, Kendricks is not entitled to § 2255 relief on this claim.

In sum, during the course of the trial, the government presented testimony from several witnesses, including the victim bank tellers; the officers who apprehended and arrested Kendricks; the co-defendants who actually went into the bank and committed the robbery; and the agent to whom Kendricks gave a statement. By the testimony of those witnesses, the government established that on July 9, 2001, and August 3, 2001, Kendricks participated in planning the bank robberies; knew his co-conspirators were armed when they went in to rob the banks; and he was the getaway driver in both bank robberies. Thus, the evidence was sufficient to support each of Kendricks' convictions.

Kendricks has failed to provide any evidence to contradict the testimony of his co-defendants other than to claim, without providing any facts or proof, his co-defendants' cell-phone bill demonstrates he was not present at the Cleveland Sun Trust Bank robbery. No such evidence is before the Court. Nevertheless, cell-phone records would not demonstrate Kendricks' location during the bank robberies. Sufficient evidence supports Kendricks' convictions. Accordingly, this factually unsupported inadequate claim does not entitle Kendricks to § 2255 relief.

C.     **Misapplication of the Sentencing Guidelines**

Kendricks contends his sentence was enhanced by unrelated juvenile convictions which were

not included in the indictment or found by a jury beyond a reasonable doubt in violation of *United States v. Booker*, 543 U.S. 220,244 (2005) (The Supreme Court held "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt").

First, Kendricks is not entitled to any relief on this claim because the United States Supreme Court has not made *Booker* retroactively applicable to cases on collateral review. Second, Kendricks interpretation of *Booker* is flawed. "The Supreme Court in *Booker* held that the Sixth Amendment applies to federal sentencing guidelines such that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Martinez*, 430 F.3d 317, 340 (6th Cir. 2005)(citation omitted), *cert. denied*, 126 S.Ct. 1603 (2006). Thus, even if *Booker* was retroactively applicable on collateral review, Kendricks would not be entitled to any relief because a court is permitted to enhance a defendant's punishment on the basis of a prior conviction without the defendant admitting the prior conviction or the jury finding the defendant had a prior conviction beyond a reasonable doubt. Such an enhancement need not be charged and proved before a jury. Consequently, the prior conviction enhancement of Kendricks' sentence does not violate the Sixth Amendment and this claim is without merit. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005) (prior convictions need not be charged and proved before a jury).

Accordingly, *Booker* does not afford Kendricks any relief on his challenge to the enhancement of his sentence on the bases of his prior conviction and Kendricks is not entitled to

§ 2255 relief on his claim.

**D.** **Prosecutorial Misconduct**

Kendricks claims the prosecutor engaged in misconduct when he led the witnesses, refreshed their memory by hinting to the witnesses, and questioned the witnesses about events which were not included in the indictment. This claim is insufficiently pleaded. Kendricks has neither identified the witnesses to whom he refers nor the prosecutor's inappropriate statements or questions. Kendricks has failed to provide any supporting facts to support his prosecutorial misconduct claim. Hence, he has inadequately pleaded this claim under Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts, which requires claims be plead with factual specificity. Kendricks' claim fails to "set forth in summary form the facts supporting each of the grounds thus specified**."** Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts. Kendricks' factually unsupported claim that the prosecutor led the witnesses, coached the witnesses, and questioned the witnesses about uncharged crimes without identifying the witnesses and the specific inappropriate questions and statements is insufficient to state a claim. Thus, Kendricks' claim of prosecutorial misconduct will be dismissed for failing to set forth in summary form the facts supporting this claim. Rule 2(c) of the Rules Governing Section 2255 Cases in the United States District Courts.

However, assuming for the sake of discussion Kendricks' prosecutorial misconduct claim is adequately plead, it is, nevertheless, procedurally barred because this claim could have been fully and completely addressed before this Court during trial or on direct review. When a federal defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate either cause and prejudice for failing to

timely raise the claim, or actual innocence. Kendricks never raised an allegation of prosecutorial misconduct while the case was before this Court, nor did he pursue such a claim on direct appeal. Kendricks has offered no explanation for his default of his prosecutorial misconduct claim. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent'" (citations omitted).). Accordingly, Kendricks prosecutorial misconduct claim will be dismissed as inadequately pleaded and, in the alternative, as procedurally defaulted.

## VI.    CONCLUSION

For the reasons set forth above, the Court holds Kendricks's conviction and sentence were not in violation of the Constitution or laws of the United States, and the motion and amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File Nos. 1 & 4).

A separate judgment order will enter.

/s/ _____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**